ROBERT BURGESS ET AL.

V.

CHARLES CAPES, FOR USE, ETC.

*Garnishment—Statutes—Construction of—Choses in Action.*

The expression, "choses in action" in the provisions of the statute in regard to garnishment, refers only to those in the custody, charge or possession of the garnishee belonging to the defendant, and held against third parties.

[Opinion filed February 14, 1890.]

APPEAL from the Circuit Court of McLean County; the Hon. A. SAMPLE, Judge, presiding.

Messrs. EDWARDS & EVANS, for appellants.

Messrs. KERRICK, LUCAS & SPENCER, for appellee.

CONGER, J.   On the 8th day of March, 1886, appellant sold to Charles T. Capes a stallion, and delivered to him the following instrument:

" Bill of sale of Pride of Maplethorp:—This is to certify that we have sold the imported shire stallion, Pride of Maplethorp, to Mr. C. T. Capes, of Pontiac, Ill.   This also certifies that the above mentioned stallion, Pride of Maplethorp, was imported from England on the steamship Lake Huron, by the Burgess Bros., of Wenona, Ill.   This also certifies that the above mentioned stallion is free from all hereditary diseases, and is a breeder, and in case said stallion proves contrary in a reasonable time, say two years, if no mishaps allay him, we agree to take said stallion back and furnish the buyer another stallion of same value as the above stallion, provided the said stallion, Pride of Maplethorp, is returned to us in good condition.

"BURGESS BROS., Wenona, Ill.

"Dated Wenona, March 8, 1886."

In April, 1889, Haynes, Gorden & Co. recovered in the Circuit Court of McLean County, a judgment against said Capes for $2,000, and after execution had been issued thereon, and returned no property found, they proceeded, under the statute, to summon appellants as garnishees.

Interrogatories were filed and answered and the cause was tried by a jury, resulting in a verdict against appellants of $1,375, upon the theory that said stallion was not a good breeder; the warranty in the bill of sale had been broken, and therefore appellants were liable to Capes for damages, and that such liability on the part of appellants to Capes was a proper subject of garnishment in favor of Haynes, Gorden & Co.   Appellants insisted in the court below, and contend

here, that the claim of Capes against appellants was for unliquidated damages, and they were not liable as garnishees.

It can not be doubted that the general rule is, that where the claim of the defendant against the garnishee rests in unliquidated damages, the garnishee can not be made liable. Drake on Attachment, Sec. 548; Waples on Attachment, page 197.

In Sec. 544 in Drake on Attachment, it is said: "That which the garnishment operates upon in this class of cases, is credits. The term credits, in this connection, is used in the sense in which it is understood in commercial law, as the correlative of debt."

But it is insisted by counsel for appellee that these general principles have no application in this State, because our statute, unlike those of others, includes choses in action as subjects of garnishment.

A chose in action is thus defined: "A right to receive or recover a debt, or money, or damages for breach of contract, or for a tort connected with a contract, but which can not be enforced without action." Chap. 62, R. S., Sec. 5, provides that upon a person being summoned as a garnishee, that interrogatories shall be filed, "and compel the answer of any and every garnishee touching the lands, tenements, goods, chattels, moneys, choses in action, credits and effects of such defendant, and the value therefor in his possession, custody or charge, or from him due and owing to the said defendant." The language of Sec. 21 of the Attachment Act, which provides for summoning garnishees in original attachments, directs that the sheriff shall summon as garnishees all persons "whom the creditor shall designate as having any property, effects, choses in action or credits in their possession or power, belonging to the defendant, or who are in anywise indebted to such defendant."

The question arising upon this record is the construction of these sections, for we assume they must be construed together and are both intended to make one summoned as a garnishee liable to the same extent whether summoned as such in an attachment proceeding, or under the provisions of the chapter on garnishment.

The first section of this chapter provides that the court or justice of the peace, "shall examine and proceed against such garnishee or garnishees in the same manner as is required by law against garnishees in original attachments," while the first part of Sec. 5 already referred to, by its language plainly refers to cases where one is summoned as garnishee in an original attachment proceeding or by garnishee summons issued out of a court of record.

Does the language of Sec. 5 mean choses in action belonging to the defendant against third parties, the evidence of which may be in the possession, custody or charge of the garnishee alone, or does the language, " or from him due and owing to the said defendant," include choses in action which the defendant may hold against the garnishee? So far as we are advised there has been no adjudication upon this point. After carefully considering the various provisions of the statute we have reached the conclusion that the expression "choses in action," refers only to those in the possession, custody or charge of the garnishee belonging to the defendant, and held against third parties. This, we think, is apparent, first, from the fact that in the attachment act, which, as we have said, intends to give the same remedy against the garnishees, the language used is, " or who are in anywise indebted to such defendant," thus showing that the legislature intended no departure from the general rule as to what is subject to garnishment, except to make the garnishee answer as to effects of any and every kind of the defendant in his possession, custody or charge.

By Sec. 20 and succeeding sections of Chap. 62, it is provided that when any garnishee has any goods, chattels, choses in action, or effects, other than money, belonging to the defendant, he shall deliver them to the officer holding the execution and he shall sell them and apply the proceeds, etc.; and by Sec. 24 the court may "authorize the garnishee to collect any choses in action, and account for the proceeds."

Thus it is seen if the term "chose in action" as used in Sec. 5, includes those held by the defendant against the garnishee, he may be required to sue himself, which is an absurdity, or by

the other sections he may surrender to the officer, to have sold, the defendant's claim upon him for damages for a violation of a contract, which is equally as absurd. Again the words, "or from him due and owing to the said defendant," clearly do not apply to all the specific things mentioned as being in the possession of the garnishee, and must be restricted to those to which the words would properly apply. One can not be said to owe credits or effects, but may owe goods or money; so we think it can not be said that one owes to another a chose in action, or, as defined, a right to recover a debt, or as Blackstone defines it, the recompense one is entitled to recover as damages for a violation of a contract. In the case at bar appellants may owe Capes money for a violation of their warranty, but it is absurd to say they owe him the right to recover it in an action.

We are inclined to think, therefore, that the rules already quoted from Drake and Waples are applicable to the facts of this case, and that appellants were not liable as garnishees upon the bill of sale. There is another view of this bill of sale which, to our minds, shows the difficulty there is in attempting to hold appellants liable as garnishees in this proceeding. It is insisted by counsel for appellee that "Capes had the right under the contract, to chose either of two remedies, if the horse proved not to be a breeder. He could sue for the breach, or could demand another horse. The remedies were cumulative and not dependent upon each other." Admitting, without intending to decide the question, that this position is correct, by what authority do appellees in this case take it upon themselves to elect for Capes as to which remedy he will pursue? How can they assume that Capes would not prefer to return the horse and take another in its place?

It is no answer to say that it is shown in this case that Capes made an unsuccessful effort to return the horse, and was therefore compelled to rely upon an action for breach of warranty, for while it may be true in this particular case that the wishes of Capes and appellees coincided, they might not in all cases, and to sustain this action it must be assumed in all

similar cases when one has an election like that claimed for Capes, his creditors, and not he, must determine what it shall be.

The judgment of the Circuit Court will therefore be reversed.

*Judgment reversed.*